**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

| | |
|---|---|
| FLUOR FEDERAL SOLUTIONS, LLC )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BAE SYSTEMS ORDNANCE )<br>SYSTEMS, INC. )<br>)<br>    Defendant. )<br>)<br>_____ ) | Civil Action No. __7:19CV698__ |

## COMPLAINT

Plaintiff, Fluor Federal Solutions, LLC ("Fluor"), through its undersigned counsel, files this Complaint against Defendant, BAE Systems Ordnance Systems, Inc. ("BAE"). In support of this Complaint, Fluor states as follows:

## NATURE OF ACTION

1.      This action arises from a Subcontract between Fluor and BAE under which Fluor provided design and construction services to BAE for a new natural gas boiler facility on the Radford Army Ammunition Plant in Radford, Virginia ("RFAAP") ("the Project").

2.      Without any legal or contractual basis, BAE has failed and refused to pay Fluor for work performed and accepted by BAE under the Subcontract. Thus, BAE has materially breached its Subcontract with Fluor.

3.      Additionally, as set forth in this Complaint, BAE intentionally withheld material information related to the Project to induce Fluor to execute a Subcontract with BAE. BAE also misrepresented the Project requirements after Subcontract execution, thereby causing Fluor to incur significant damages.

1

4.      Principally, BAE represented that Fluor's efforts were required to support the design and construction of a temporary boiler facility ("Temporary Facility") at a specific location on the RFAAP. However, BAE was aware, before executing Fluor's Subcontract, that the Project was actually for construction of a much larger, more sophisticated permanent boiler facility ("Permanent Facility") at an entirely different location on RFAAP.

5.      Despite knowing that the Project was never intended to include the design or construction of a Temporary Facility, BAE failed to inform Fluor of these changes during the proposal period. Instead, BAE allowed Fluor to submit proposals for design and construction of a Temporary Facility, which was significantly less expensive than a Permanent Facility. And BAE awarded a Subcontract to Fluor based on Fluor's lower-priced proposal.

6.      During the Project, BAE continued its deceptive practices by issuing directives and Subcontract modifications to Fluor for construction of a Temporary Facility. However, BAE had no intention of constructing a Temporary Facility.

7.      As a direct and proximate result of BAE's fraudulent actions and its breach of contract, Fluor has suffered, and will continue to suffer, damages in an amount not less than $75,000, exclusive of interest, costs, and attorneys' fees, the precise amount to be proven at trial.

## PARTIES

8.      Plaintiff, Fluor Federal Solutions, LLC, is a limited liability company organized under the laws of the State of South Carolina with its principal place of business located at 100 Fluor Daniel Drive, Greenville, South Carolina 29607.

9.      Upon information and belief, Defendant, BAE Systems Ordnance Systems, Inc. is a Delaware corporation with its principal place of business located at 4509 West Stone Drive, Kingsport, Tennessee 37660.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees, and complete diversity of citizenship exists between BAE and Fluor.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because: (a) a substantial part of the events giving rise to the claims occurred in this district; (b) a substantial amount of the work performed under the Subcontract was performed in this judicial district; and, (c) the Subcontract was breached by BAE in this judicial district. Article 19(b) of the Subcontract also requires all actions arising out of the Subcontract to be filed in a court of competent jurisdiction in the state where the Project was performed.

12.     Under Section 1B, Article 16 of the Subcontract, the Subcontract is to be interpreted under the laws of the Commonwealth of Virginia.

**FACTUAL BACKGROUND**

I.     **The Subcontract**

13.     On or about May 17, 2011 the United States Army ("Army") awarded BAE a Basic Ordering Agreement, identified as Contract No. W52P1J-11-G-0002 ("the BOA"), under which BAE was responsible for modernization projects at the RFAAP.

14.     On or about December 19, 2013 the Army issued Deliver Order 0029 ("the Prime Contract") to BAE under the BOA.

15.     The Prime Contract required BAE to design and construct a new natural gas-fired combined heating and power plant capable of meeting RFAAP's entire steam and electrical demand.

16.     The Project's purpose was to replace the existing coal-fired power plant that was

being used to power the RFAAP facility.

17.     On or about October 7, 2015, BAE issued a Request for Proposal to Fluor seeking a proposal for the design, construction, and commissioning of a Temporary Facility.

18.     The Temporary Facility was to be used for a minimum of 18 months while a Permanent Facility was constructed.

19.     The Temporary Facility's location, as set forth in BAE's Request for Proposal was selected by BAE and the Army.

20.     In response to BAE's request, Fluor submitted a proposal for a Temporary Facility and negotiated with BAE in good faith for the opportunity to work on the Project.

21.     On or about October 13, 2015, before Fluor submitted its proposal to BAE, the Army issued Modification 2 to BAE's Prime Contract.

22.     Modification 2 of BAE's Prime Contract changed the location where the Temporary Facility would be constructed on the RFAAP.

23.     Despite receiving Modification 2 of its Prime Contract, BAE purposely and intentionally refused to inform Fluor that the location of the Temporary Facility to be designed by Fluor had changed. Instead, BAE allowed Fluor to submit a proposal based upon the original location.

24.     On or about December 10, 2015, BAE received Modifications 3 and 4 to its Prime Contract. Modifications 3 and 4 required BAE to design and construct a Permanent Facility rather than a Temporary Facility.

25.     Despite receiving Modifications 3 and 4 of its Prime Contract, BAE purposely and intentionally refused to inform Fluor that a Temporary Facility would not be designed or built on the RFAAP. Instead, BAE allowed Fluor to submit a proposal for the design of a Temporary

4

Facility.

26.     On or about December 30, 2015, Fluor and BAE executed a firm-fixed price Subcontract for the design of a Temporary Facility in the amount of $1,519,560.85.

27.     At the time the Parties executed the Subcontract, BAE knew that the location of the boiler facility had changed, that the Temporary Facility required by Fluor's Subcontract would never be designed or built, and that BAE had no intention of honoring the Subcontract to design or construct a Temporary Facility.

28.     By concealing information related to the location and size of the required boiler facility, BAE took advantage of the lower price submitted by Fluor in its proposal.

29.     Whereas the Temporary Facility was intended for a design life of 18 months, the Permanent Facility had a required life span of 30 years. This difference resulted in significantly increased costs for design and construction of the boiler facility.

30.     Fluor performed no work to design or construct a Temporary Facility as set forth in its proposal submitted to BAE. Instead, BAE deleted the requirement for Fluor to design a Temporary Facility and replaced it with the requirement to design a Permanent Facility.

31.     On or about January 27, 2016, the Army issued Modification 5 to BAE's Prime Contract.

32.     Modification 5 of BAE's Prime Contract deleted the requirement for a Temporary Facility "in its entirety" and replaced the requirement with a Permanent Facility.

33.     Notwithstanding its knowledge that the Army had changed the Project to a Permanent Facility, BAE requested a proposal from Fluor for construction of a Temporary Facility. BAE then issued Modification 1 to Fluor's Subcontract on March 23, 2016. Under Modification 1, Fluor was required to construct a Temporary Facility for the amount of $10,542,143.56.

34.     Despite issuing Modification 1 to Fluor, which required construction of a Temporary Facility, BAE then directed Fluor to commence construction of a Permanent Facility.

35.     Based on BAE's directives to proceed with a Permanent Facility, Fluor commenced construction activities for the Permanent Facility on or about March 28, 2016. Meanwhile, the parties negotiated the cost for constructing a Permanent Facility.

36.     It was not until September 1, 2016 that BAE issued Modification 3 to Fluor's Subcontract, which authorized payment for the design of a Permanent Facility. Even then, the Parties had yet to agree on a price for construction of a Permanent Facility.

37.     Despite multiple requests for copies of BAE's Prime Contract, BAE failed and refused to provide Fluor with the Prime Contract or any of its Modifications. Instead, BAE concealed the changes being issued by the Army, and was issuing directives and Modifications to Fluor that did not match the Prime Contract requirements.

38.     To obtain a copy of BAE's Prime Contract, Fluor was required to serve the Army with a request under the Freedom of Information Act.

39.     On or about October 3, 2018, the Army provided Fluor with heavily redacted versions of BAE's Prime Contract. However, those documents revealed that BAE was not adhering to the Prime Contract requirements, was aware of the multiple changes issued by the Army converting the Project from a Temporary to Permanent Facility, and revealed clearly the fraudulent actions undertaken by BAE.

## II.     <u>Modification 4 – The Unpriced Change Order</u>

40.     On or about November 29, 2016, the Parties executed Modification 4 to Fluor's Subcontract.

6

41.     Modification 4 of the Subcontract was an Unpriced Change Order ("UCO") incorporating Statement of Work Addendum, Revision 4 ("SOW Rev. 4") - the Permanent Facility.

42.     Modification 4 was retroactive to April 2016, eliminated the requirement for Fluor to construct a Temporary Facility, and replaced it with the requirement to construct a Permanent Facility.

43.     Under Modification 4, the Parties agreed to negotiate and definitize the price for construction by December 15, 2016. Modification 4 contained a Not-to Exceed ("NTE") value and an undefinitized price for construction of a Permanent Facility in the amount of $22,262,795.00. Thus, the cost of construction had doubled from the original amount of $10,542.143.56 for a Temporary Facility.

44.     In the event the parties failed to definitize the construction price by December 15, 2016, Fluor's obligation to continue performance automatically terminated.

45.     Despite their attempts, the Parties were unable to definitize the construction price under Modification 4.

46.      In the absence of a contractual obligation to perform, and facing ever-increasing costs of constructing a Permanent Facility, Fluor suspended performance from February 15, 2017 to February 17, 2017.

**III.    Modification 7 – Unpriced Change Order, Amendment 1**

47.     In an effort to complete the Project, BAE requested that Fluor remobilize to the Project and negotiate another Modification that would increase the price for construction of a Permanent Facility. Fluor therefore remobilized to the Project on or about February 17, 2017.

48.     On or about March 29, 2017, the Parties executed Subcontract Modification 7.

49.     Subcontract Modification 7 amended Modification 4 and increased the NTE price for construction costs to $30,262,795.00. Thus, the cost of construction had tripled from the original amount of $10,542,143.56 for a Temporary Facility.

50.     Notwithstanding the NTE, Modification 7 specifically reserved Fluor's right to recover costs for any changes to the Subcontract and work performed outside of SOW Rev. 4.

51.     Under Modification 7, Fluor also agreed to assist BAE in negotiating with the Army for recovery of Fluor's costs under the Prime Contract. However, the Parties acknowledged that Fluor's right to recover for work performed under SOW Rev. 4, or for any changes, was "not dependent upon recovery by BAE Systems-OSI of costs from the USG [Army]."

52.     Modification 7 did not establish a date by which the parties were required to definitize the construction price; however, the Parties reiterated their commitment to negotiate toward definitization in good faith.

53.     To date, the NTE for construction costs remains undefinitized, and the Parties have not agreed on a final price for construction.

## IV.     **Changed Work**

54.     Throughout the Project, BAE issued numerous oral and written directives that changed the scope of the Subcontract. Under the Subcontract terms, Fluor was required to continue performance, incur the additional costs, and seek reimbursement from BAE.

55.     Fluor presented its changes to BAE during the Project and through a Change Proposal submitted to BAE after execution of Modification 7.

56.     The changes directed or caused by BAE, and set forth in Fluor's Change Proposal, included, but were not limited to, the following: (a) requirement to perform stress tests on boilers and piping elements that were supplied by another subcontractor; (b) BAE's decision to deliver

the six boilers at different times and re-sequence the work; (c) numerous design changes requiring Fluor to reroute pipes, relocate and reroute pipe racks, redesign pipe rack saddles, and redesign the condensate system of the Boiler Facility; (d) BAE's imposition of more stringent standards on the facility's fire alarm and combustible gas monitoring systems than those articulated in the Subcontract; (e) forcing Fluor to alter compliant designs and procure equipment not contemplated by the Subcontract; and, (f) remediation of defects caused by BAE's other subcontractors

57.     As of the date of this filing, BAE has failed and refused to pay Fluor for any of the changes identified in its Change Proposal.

58.     In addition to changes directed or caused by BAE's actions, BAE also caused critical path delays to the Project and directed Fluor to accelerate work to mitigate BAE-caused delays.

59.     BAE's delays caused damages to Fluor including, but not limited to, additional general conditions costs, labor costs, material, and rental costs.

60.     BAE's directives to accelerate work in order to complete the Project faster also caused Fluor to suffer significant damages including, but not limited to, additional labor and additional material.

61.     BAE is responsible for all additional costs of delay and acceleration caused by BAE's actions and, to date, has failed and refused to compensate Fluor for these additional costs.

V.     **Fluor's August 2017 Change Proposal**

62.     As set forth above, Modification 7 required the Parties to negotiate a firm-fixed price for construction of the Project and authorized Fluor to recover costs for work performed outside the scope of SOW Rev. 4.

63.     Under Fluor's Subcontract, a claim against BAE is required to be in the form of a

change proposal. In accordance with the Subcontract, and Modification 7, on or about August 15, 2017, Fluor submitted a Change Proposal to BAE detailing all amounts owed to Fluor for constructing the Project including, but not limited to, costs for base scope work, changes, delays, overhead, profit, and unanticipated costs incurred by Fluor as a result of BAE's actions and directives on the Project.

64.     With its Change Proposal, Fluor provided invoices, receipts, and hundreds of supporting documents, including detailed narratives describing all 37 Project Change Notices ("PCNs"), a critical path delay analysis, cost estimates, correspondence, and extensive documentation detailing Fluor's entitlement to additional compensation.

65.     The Change Proposal requested that BAE: (a) definitize the UCO at the proposed firm-fixed price; (b) adjust the Subcontract price for the 37 PCNs which exceeded the scope of SOW Rev. 4; and, (c) compensate Fluor for the changes and base scope work for which it had not yet been paid.

66.     In all, Fluor presented $50,060,614 in costs to BAE, which included: (a) $33,230,509 for Fluor's base scope construction costs; (b) $1,097,633 in change proposal development costs; and (c) $15,732,472 in compensable changes, delay and acceleration costs. After subtracting $29,478,827.33 which Fluor had already been paid, the Change Proposal sought payment from BAE in the amount of $20,581,786.67.

67.     On or about October 26, 2017, BAE issued a letter identifying alleged inadequacies in Fluor's Change Proposal. Among other alleged inadequacies, BAE wrongfully asserted that Fluor failed to properly support its Change Proposal with cost information, and that many of the changes identified by Fluor were part of Fluor's base scope work requirements.

68.     BAE also asserted that the "primary inadequacy" was Fluor's failure to provide an

itemized accounting distinguishing between costs allocable to the Temporary Facility and those allocable to the Permanent Facility.

69.     BAE sought a line-by-line comparison of changed costs for every trade between Fluor's temporary and permanent designs. Yet, Fluor neither designed nor constructed a Temporary Facility. Thus, BAE's request for such an accounting was unreasonable.

70.     Despite the exhaustive information supporting Fluor's entitlement to amounts owed for work performed, BAE improperly rejected Fluor's submission and refused to forward the Change Proposal to the Army for consideration or payment.

71.     BAE even denied payment for changes for which it admitted Fluor was entitled. Nevertheless, the Parties continued their negotiations of the Change Proposal.

72.     Fluor has completed all work required under the Project and all work for which it seeks payment in this action has been accepted by BAE.

73.     To date, BAE has failed to provide a substantive response to Fluor's Change Proposal and has refused to definitize the Subcontract.

74.     As a result, Fluor has not been fully compensated for costs it incurred performing base scope construction work for the Project, or for changes, delays, and acceleration directed and caused by BAE.

75.     Although not required for payment by BAE to Fluor, BAE has failed to submit any of Fluor's claims to the Army for review and has failed to inform the Army of any of Fluor's claims.

76.     Since Fluor submitted its Change Proposal, the Parties have attempted to resolve their disputes through meetings and negotiation.

77.    In March and April 2019, the Parties met to discuss payment to Fluor. However, they were unable to resolve their disputes.

**VI.    <u>Payment Bond Lawsuit</u>**

78.    In addition to negotiating in good faith with BAE, Fluor attempted to recover its losses by making a claim on BAE's payment bond.

79.    The Miller Act, 40 U.S.C. § 3131, requires that a payment bond be provided for any federal construction project exceeding $100,000, absent a waiver or exception as provided for in the Act. The Miller Act exists to protect subcontractors performing work on federal construction projects from the risk of non-payment.

80.    The terms of BAE's BOA and 48 C.F.R. § 52.228-16 required BAE to furnish a payment bond in an amount to be specified in each task order issued under the BOA.

81.    On or about December 14, 2017 Fluor requested a copy of BAE's payment bond.

82.    BAE failed and refused to provide Fluor with a copy of the bond, although Fluor is entitled by federal regulation to obtain it.

83.    Repeated requests for BAE's payment bond over the course of several months received evasive and deceptive responses from BAE. On or about September 26, 2018, and as authorized by 48 C.F.R. § 28.106-6, Fluor formally requested a copy of any payment bond provided by BAE for the Project from the U.S. Army's Contracting Officer assigned to the Project.

84.    On or about October 9, 2018, nearly one year after Fluor's initial request, BAE informed Fluor that no bonds were required for the Project. BAE stated: "I have confirmed that the prime contract that Package Boilers was performed under did not require a bond by BAE Systems. Therefore, your request is closed."

85.     On or about October 10, 2018, Fluor again requested from the Army a copy of the Bond provided for the Project as authorized by 48 C.F.R. § 28.106-6.

86.     Having received evasive responses from BAE, no response from the Army, and facing statutory limitations issues, Fluor filed a Miller Act lawsuit against "John Doe" payment bond surety defendants in this Court on October 19, 2018 seeking payment from BAE's unidentified payment bond surety or sureties.

87.     This Court authorized third-party discovery to allow Fluor to ascertain the identity of the surety or sureties who had furnished a payment bond to BAE.

88.     In an affidavit provided by BAE responsive to the Court authorized discovery, BAE asserted that it had never requested the waiver of any payment bond requirement.

89.     After issuing subpoenas to the Army and deposing the Army's Contracting Officer, Fluor learned that BAE had in fact requested and received a Project-specific waiver of the Miller Act requirement to furnish a payment bond for the protection of its subcontractors.

90.     By requesting a waiver of the Project's payment bond requirements, BAE deprived Fluor of a remedy guaranteed by federal statute and by contract. Without any payment bond defendant, Fluor had no choice but to dismiss the Miller Act lawsuit and continue to pursue recovery from BAE.

## VII.   Fluor's August 2019 Change Proposal Update

91.     On August 12, 2019 Fluor provided BAE an update to its Change Proposal converting certain estimated costs to actual costs ("Change Proposal Update"), updating the delay analysis, and adding an analysis of Fluor's costs and accounting methods. The Change Proposal Update demanded a substantive response within 60 days of receipt.

92.     Fluor's Change Proposal Update reveals that Fluor has incurred $50,254,837 on the Project. This amount includes: (a) $35,459,111 for base scope construction costs, profit, and overhead; (b) $2,463,545 in proposal development costs; and, (c) $12,332,181 Fluor incurred as a result of changes, delays, and differing site conditions caused by BAE outside the scope of SOW Rev. 4. To date, Fluor has been paid $29,478,827.33, leaving a balance due and owing from BAE to Fluor of $20,776,009.67.

93.     Notwithstanding Fluor's submission and request for a response, BAE has failed and refused to pay Fluor, has failed and refused to submit Fluor's costs to the Army, and has failed and refused to negotiate with Fluor regarding its costs.

94.     To date, the Subcontract remains undefinitized and Fluor has not been fully compensated for its base scope costs to construct the Permanent Facility or for the changes, delays, and other costs it incurred at BAE's direction that were outside the scope of SOW Rev. 4.

95.     Fluor has completed all work required under its Subcontract and all BAE-directed changes.

96.     Any and all applicable and enforceable conditions precedent under the Subcontract and applicable law to bringing the claims set forth herein and commencing this action have occurred, have been performed, or are excused.

## COUNT I
### (Breach of Contract)

97.     Fluor re-alleges and reincorporates the allegations contained in Paragraphs 1-96 as if they were fully set forth herein.

98.     The Subcontract is a binding and enforceable agreement between Fluor and BAE.

99.     Under and in furtherance of the Subcontract, BAE agreed to undertake certain obligations, including the obligation to pay Fluor for all costs incurred under the Subcontract.

100.     Despite the obligations set forth in the Subcontract, BAE breached the Subcontract by, among other actions, failing and refusing to pay Fluor all amounts owed under the Subcontract for base scope work and for changes, delays, and acceleration costs caused and directed by BAE on the Project, along with the overhead and profit to which Fluor is entitled.

101.     As a direct and proximate result of BAE's breach of the Subcontract, Fluor has suffered, and will continue to suffer, damages in an amount in excess of $75,000.00, the precise amount to be proven at trial, independent of interest, costs and reasonable attorneys' fees.

WHEREFORE, Fluor respectfully requests judgment against BAE in a sum not less than $75,000.00, the specific amount to be proven at trial, together with prejudgment and post-judgment interest, costs, and reasonable attorneys' fees.

## COUNT II
### (Quantum Meruit)

102.     Fluor realleges and reincorporates the allegations contained in Paragraphs 1-96 as if they were fully set forth herein.

103.     Count II of this Complaint is pled in the alternative to Count I, and only to the extent that this Court may find the Subcontract between Fluor and BAE to be unenforceable or that Fluor's rights are extra-contractual.

104.     Fluor rendered valuable services to BAE by constructing a Permanent Facility as required by BAE's Prime Contract.

105.     BAE was fully aware of all work performed by Fluor on the Project and the work performed by Fluor was undertaken at BAE's direction.

106.     All work and services provided by Fluor were rendered under such circumstances that BAE knew Fluor expected to be compensated.

107.     BAE accepted and retained the services.

108. BAE has failed and refused to pay for work performed by Fluor on the Project.

109. As a direct and proximate result of BAE's failure to pay Fluor for work performed, Fluor has suffered, and will continue to suffer, damages in an amount in excess of $75,000.00, the precise amount to be proven at trial, independent of interest, costs and reasonable attorneys' fees.

WHEREFORE, Fluor respectfully requests judgment against BAE in a sum not less than $75,000.00, the precise amount to be proven at trial, together with prejudgment and post-judgment interest, attorney's fees, costs and such other further relief as the Court may deem just and proper.

## COUNT III
### (Unjust Enrichment)

110. Fluor realleges and reincorporates the allegations contained in Paragraphs 1-96 as if they were fully set forth herein.

111. Count III of this Complaint is pled in the alternative to Count I, and only to the extent that this Court may find the Subcontract between Fluor and BAE to be unenforceable or that Fluor's rights are extra-contractual.

112. Fluor performed work for BAE and at BAE's direction on the Project.

113. In performing work as directed, Fluor conferred a benefit upon BAE by completing work required under BAE's Prime Contract with the Army.

114. BAE was fully aware of all work performed by Fluor on the Project, and of the benefit Fluor was conferring upon BAE as a result of its performance.

115. BAE has accepted and retained the services but has refused to pay for all work performed by Fluor on the Project.

116. As a direct and proximate result of Fluor's work, BAE has received a substantial benefit for which Fluor is entitled to be compensated.

117.   BAE's acceptance and retention of the services performed by Fluor without appropriate remuneration and payment for their value is inequitable and leads to an unjust enrichment conferred upon BAE.

118.   The reasonable value of the work performed by Fluor and for which BAE has not paid is not less than $75,000.00, the precise amount to be proven at trial.

WHEREFORE, Fluor respectfully requests judgment against BAE in a sum not less than $75,000.00, the precise amount to be proven at trial, together with prejudgment and post-judgment interest, attorney's fees, costs and such other further relief as the Court may deem just and proper.

## COUNT IV
### (Breach of Duty of Good Faith and Fair Dealing)

119.   Fluor realleges and reincorporates the allegations contained in Paragraphs 1-96 as if they were fully set forth herein.

120.   The Subcontract is a binding and enforceable agreement between Fluor and BAE.

121.   The Subcontract contains an implied covenant of good faith and fair dealing.

122.   Despite the obligations of good faith and fair dealing imposed upon BAE by its Subcontract with Fluor, BAE has, with malice and intent to injure, failed and refused to pay Fluor as required under the Subcontract, failed and refused to negotiate Fluor's Change Proposal as required by the Subcontract, and has failed and refused to negotiate in good faith payments to Fluor which BAE acknowledges are due and owing.

123.   As a direct and proximate result of BAE's failure to act in good faith, Fluor has suffered, and will continue to suffer, damages in an amount not less than $75,000.00, the precise amount to be proven at trial.

WHEREFORE, Fluor respectfully requests judgment against BAE in a sum not less than $75,000.00, the precise amount to be proven at trial, together with prejudgment and post-judgment interest, attorney's fees, costs and such other further relief as the Court may deem just and proper.

## COUNT V
### (Fraud in the Inducement)

124.    Fluor realleges and reincorporates the allegations contained in Paragraphs 1-96 as if they were fully set forth herein.

125.    Throughout negotiations of Fluor's Subcontract, BAE falsely represented the Project as one requiring design and construction of a Temporary Facility.

126.    However, before Fluor and BAE executed the Subcontract, BAE learned that the location of the boiler facility had changed and that the Temporary Facility would never be built. As a result, BAE had no intention of performing the Subcontract for the design and construction of a Temporary Facility.

127.    On October 7, 2015, BAE issued a request for proposal from Fluor for the design of a Temporary Facility at a specific location on the RFAAP.

128.    On October 13, 2015, the Army issued Modification 2 to BAE's Prime Contract. Modification 2 changed the location of the Temporary Facility. Yet, BAE failed and refused to inform Fluor of this change and allowed Fluor to submit a proposal based on the original location.

129.    Before Fluor submitted its proposal to BAE, the Army also informed BAE that the Temporary Facility would be cancelled. Yet, BAE failed and refused to inform Fluor of this change and allowed Fluor to submit its proposal based on a Temporary Facility.

130.    BAE and Fluor executed the Subcontract on December 30, 2015.

131.    On or about January 27, 2015, the Army issued Modification 5 to BAE's Prime Contract.

132.     Modification 5 of BAE's Prime Contract deleted the design and construction of a Temporary Facility "in its entirety" and replaced the Temporary Facility with a Permanent Facility.

133.     Notwithstanding that BAE knew by January 27, 2015 that a Temporary Facility was deleted from its Prime Contract, on or about March 31, 2016 BAE issued Modification 1 to Fluor's Subcontract, which required Fluor to construct a Temporary Facility.

134.     Despite requests by Fluor, BAE failed and refused to provide copies of its Prime Contract, intentionally hiding its knowledge that the Project for which Fluor was contracting was significantly different from the Prime Contract.

135.     To obtain a copy of BAE's Prime Contract, Fluor was required to submit requests under the Freedom of Information Act.

136.     Fluor received heavily redacted copies of BAE's Prime Contract modifications on October 3, 2018.  Nevertheless, those modifications revealed BAE's knowledge regarding the changes to the boiler facility location and the change from temporary to permanent. Thus, Fluor's cause of action for fraud in the inducement is timely.

137.     BAE purposely concealed its knowledge about the boiler facility from Fluor and allowed Fluor to continue to propose a price for the design and construction of a Temporary Facility.

138.     BAE knowingly made false representations with the intention of inducing Fluor to execute a Subcontract predicated on a lower price for a Temporary Facility.

139.     Moreover, BAE's misrepresentations as to the Subcontract requirements were material, resulting in a Subcontract that would vastly undercompensate Fluor.

140.     BAE's fraudulent misrepresentations continued during Fluor's performance on the Project. During the Project, BAE was concealing from Fluor the changes and modifications issued

by the Army to BAE's Prime Contract.

141.    BAE's misrepresentations intentionally and knowingly deprived Fluor of the opportunity to develop an accurate estimate for the cost of the work, or to decide not to pursue the Project at all.

142.    Fluor relied on BAE's misrepresentations as to the Subcontract requirements and was induced to execute a Subcontract and modifications predicated on pricing to construct a Temporary Facility, which was fundamentally inadequate to compensate Fluor for costs it would incur constructing a Permanent Facility.

143.    As a direct and proximate result of BAE's fraudulent misrepresentations, Fluor has suffered, and will continue to suffer, damages in an amount in excess of $75,000.00, the precise amount to be proven at trial.

WHEREFORE, Fluor respectfully requests judgment against BAE in a sum not less than $75,000.00, the precise amount to be proven at trial, together with prejudgment and post-judgment interest, attorney's fees, costs and such other further relief as the Court may deem just and proper.

## COUNT VI
### (Declaratory Judgment)

144.    Fluor realleges and reincorporates the allegations contained in Paragraphs 1 – 96 as if fully set forth herein.

145.    As a result of BAE's failure and refusal to pay Fluor for all work performed on the Project, an actual controversy exists warranting action by this Court in the form of a declaratory judgment authorized by 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

146.    Fluor has suffered and will continue to suffer damages due to BAE's refusal to pay Fluor for the work it has performed on the Project.

WHEREFORE, as authorized by 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Fluor respectfully requests that this Court adjudge and declare as follows:

A.      That, in the event the UCO is not definitized, the Subcontract requires BAE to reimburse Fluor for all reasonable, allowable, and allocable costs it incurred in performing base scope work and all costs for changes, delays, and acceleration along with overhead and profit to which Fluor is entitled and for which BAE is responsible.

Dated:   October 17, 2019

Respectfully submitted,

s/ Scott P. Fitzsimmons_____
Scott P. Fitzsimmons, Esq. (VSB 68147)
Sarah K. Bloom, Esq. (VSB 94406)
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
sfitzsimmons@watttieder.com
sbloom@watttieder.com

*Attorneys for Fluor Federal Solutions, LLC*