IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FLUOR FEDERAL SOLUTIONS, LLC, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BAE SYSTEMS ORDNANCE SYSTEMS, )<br>INC., )<br>)<br>    Defendant. ) | Civil Action No. 7:19-cv-00698<br><br>By: Elizabeth K. Dillon<br>     United States District Judge |

**MEMORANDUM OPINION**

Fluor Federal Solutions, LLC (Fluor) filed a complaint on October 17, 2019, asserting claims of breach of contract, quantum meruit, unjust enrichment, breach of the duty of good faith and fair dealing, fraud in the inducement, and a declaratory judgment action against BAE Systems Ordnance Systems, Inc. (BAE). This matter is before the court on BAE's motion to dismiss all counts for failure to state a claim. (Mot. Dismiss, Dkt. No. 8.)

The court held a hearing on BAE's motion, and at the hearing, the court denied BAE's motion as to Fluor's breach of contract claim and granted the motion as to Fluor's equitable claims of quantum meruit and unjust enrichment and as to Fluor's claim for declaratory judgment. The court further denied Fluor's claim for breach of the duty of good faith and fair dealing as moot by agreement of counsel. With respect to Fluor's fraud claim, the court took the matter under advisement, and the parties submitted supplemental briefing. For the reasons stated below, the court will grant BAE's motion in part and dismiss Fluor's fraud claim as time-barred.

I. BACKGROUND[1]

---

[1] The following factual background is taken from the allegations in Fluor's complaint, which are accepted as true for purposes of this motion.

In 2011, the United States Army awarded BAE a basic ordering agreement under which BAE was responsible for modernization projects at the Radford Army Ammunition Plant in Radford, Virginia. This action stems from a subcontract between Fluor and BAE, under which Fluor agreed to design and construct a new natural gas boiler at the Plant. Fluor has completed work on the project, and BAE has accepted that work. Nonetheless, Fluor claims that BAE has refused or failed to pay for the balance of the project costs. (Compl. ¶¶ 1–2, 13, 72, Dkt. No. 1.)

The primary dispute is over an increase in the cost of the project after the United States Army changed the scope of the project from designing and building a temporary facility in one location to designing and building a permanent facility in a different location. Fluor alleges that BAE issued a request for proposal to Fluor seeking a proposal for design, construction, and commission of a temporary facility on October 7, 2015. Later in October, the Army issued a modification to the contract, which changed the location of the facility. In December, BAE received additional modifications from the Army that changed the project to a permanent facility instead of a temporary facility. Although Fluor does not provide the date that it submitted its bid to BAE, it alleges that it executed a subcontract for the design of a temporary facility on December 30, 2015. (*Id.* ¶¶ 17–27.)

Throughout 2016, BAE issued several modifications to Fluor reflecting the modifications BAE received from the Army. Despite the subcontract to build a temporary facility, in March 2016, BAE directed Fluor to begin construction of a permanent facility. On September 1, 2016, BAE issued another modification to Fluor, authorizing payment for the design of a permanent facility. On November 29, 2016, BAE and Fluor executed a fourth modification, which eliminated the requirement for Fluor to construct a temporary facility and incorporated the requirement to construct a permanent facility. The parties did not agree to a definite price, instead agreeing to negotiate and definitize the price by December 2016. (*Id.* ¶¶ 33–43.)

As relevant to Fluor's fraud claim, Fluor alleges that BAE received several changes to its prime contract from the Army but did not pass those changes along to Fluor until after BAE solicited a bid from Fluor and entered a contract with Fluor to build a temporary facility. Instead, BAE continued to misrepresent the scope of the project. Fluor alleges that the change in plans increased costs substantially, but that BAE withheld information about those changes so that it could solicit lower bids. Fluor notes, for example, that a temporary facility would have been designed and constructed to last approximately eighteen months, whereas a permanent facility would last approximately thirty years, significantly increasing costs. (*Id.* ¶¶ 125–143.)

Fluor alleges that it requested a copy of BAE's prime contract on numerous occasions, but BAE failed to provide a copy of it. Instead, Fluor submitted a request under the Freedom of Information Act. It received a copy of BAE's prime contract on October 3, 2018. (*Id.* ¶¶ 134–136.) Fluor then filed its complaint in this court on October 17, 2019.

## II. DISCUSSION[2]

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw a "reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678. In determining whether the plaintiff has satisfied this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept legal conclusions couched

---

[2] Fluor alleges, and BAE appears to agree, that the subcontract "is to be interpreted under the laws of the Commonwealth of Virginia." (Compl. ¶ 12; *see generally* Mot. Dismiss.) Accordingly, the court will apply Virginia law.

as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

As already noted, BAE argues that Fluor's fraud claim is time-barred. Statutes of limitation create affirmative defenses that may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013) (citing *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)). While a Rule 12(b)(6) motion "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996)); *see also McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 807 (E.D. Va. 2017) ("[A] statute of limitations question under Va. Code § 8.01-249(1) may be resolved on a threshold motion to dismiss, but only if all the facts necessary for resolution of the motion appear on the face of the complaint or are otherwise indisputable.").

Virginia Code § 8.01-243(A) provides that "[u]nless otherwise provided in this section or by other statute, . . . every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Section 8.01-249(1) clarifies that a cause of action for fraud accrues "when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered." *See also STB Mktg. Corp. v. Zolfaghari*, 393 S.E.2d 394 (Va. 1990) (stating that a cause of action for fraud does not accrue "until [the plaintiff] knew or reasonably should have known of the fraud").

Questions regarding when a plaintiff discovered or should have discovered an alleged fraud are "question[s] of fact 'not measured by any absolute standard, but depending on the relative facts of the special case.'" *McPike*, 280 F. Supp. 3d at 807 (quoting *Jones v. Shooshan*, 855 F. Supp. 2d

4

594, 604 (E.D. Va. 2012)); *see also STB Mktg. Corp.*, 393 S.E.2d at 397 ("Whether such due diligence has been exercised must be ascertained by an examination of the facts and circumstances unique to each case."). Plaintiffs "bear the burden 'to prove that [they] acted with due diligence and yet did not discover the fraud or mistake until within the statutory period of limitation immediately preceding the commencement of the action.'" *Terry Phillips Sales, Inc. v. SunTrust Bank*, No. 3:13-cv-468, 2014 WL 670838, at *5 (E.D. Va. Feb. 20, 2014) (quoting *Hughes v. Foley*, 128 S.E.2d 261, 263 (Va. 1962)).

### B. Fluor's Fraud Claim is Time-Barred

Fluor alleges that BAE fraudulently induced Fluor into submitting a proposal for a temporary facility, which would have been a significantly less costly project, and continued knowingly and intentionally misrepresenting the scope of the project throughout design and construction. BAE asserts that Fluor's fraud claim is barred by Virginia's two-year statute of limitations.

The parties disagree about when Fluor discovered or reasonably should have discovered BAE's alleged fraud. Under BAE's theory, Fluor's claim accrued on the date Fluor discovered, or had reason to discover, that BAE misrepresented the scope of the project. BAE reasons that when Fluor began building a permanent facility in March 2016, Fluor must have known that it would not be designing or building a temporary facility. At the latest, BAE argues, Fluor knew it would not design or build a temporary facility by November 29, 2016, when the parties executed a modification to the subcontract that eliminated altogether the requirement for a temporary facility. Because Fluor filed its complaint more than two years later, on October 17, 2019, BAE argues that Fluor's fraud claim is barred by the statute of limitations.

Conversely, Fluor argues that it does not matter when it knew BAE's representation was false. Instead, Fluor asserts that its claim did not accrue until it discovered that BAE had

knowledge of the Army's modifications when BAE requested proposals from Fluor. In other words, because a fraud claim requires an intent to mislead, *see Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999), Fluor argues that it could not have discovered BAE's "fraud" until it discovered or had reason to discover that BAE's misrepresentation was intentional. Accordingly, Fluor asserts that the limitations period began to run in October 2018 when it received a copy of BAE's prime contract and discovered that BAE knowingly misrepresented the scope of the project. Because it filed its complaint in October 2019, Fluor argues that its fraud claim is timely. Alternatively, Fluor accuses BAE of obstructing Fluor's ability to discover its cause of action or file its complaint such that the statute of limitations was tolled until Fluor received the prime contract in 2018.

Simply put, the parties disagree about whether a plaintiff's cause of action for fraud accrues before the plaintiff discovers or has reason to discover the intent element of the alleged fraud.

### 1. Fluor's Cause of Action Accrued by November 29, 2016

The Fourth Circuit has indicated that a cause of action for fraud accrues when a plaintiff discovers or by the exercise of due diligence reasonably should have discovered (1) that the defendant misrepresented a material fact and (2) the misrepresentation's relation to the plaintiff's injury. *See Childers Oil Co., Inc. v. Exxon Corp.*, 960 F.2d 1265, 1272 (4th Cir. 1992) ("The 'discovery rule' tolls a statute of limitations until the plaintiff has, or ought to have, answers to two questions: Am I injured? Who injured me?").

In *Childers Oil*, the plaintiffs owned a gasoline service station located in an area without nearby competitors. At some point in the station's operation, the plaintiffs entered a distributorship agreement with Exxon, through which Exxon would become the plaintiffs' supplier. Before entering the agreement, the plaintiffs expressed concern that Exxon owned a tract of land 400 yards from plaintiffs' service station on which Exxon could build a competing service station. Exxon

assured that it would not build a service station on the tract if the plaintiffs entered the distributor agreement. Nonetheless, Exxon later built a service station on the tract, which took business away from the plaintiffs. The plaintiffs did not file their complaint until years later when they discovered that Exxon intentionally misrepresented its plans to build on the empty lot. *Id.* at 1267–69.

On appeal to the Fourth Circuit, the plaintiffs advanced an argument similar to Fluor's. The plaintiffs asserted that "they did not find out that Exxon knew its promise was false when made until" Childers discovered a letter in which Exxon admitted that it had always planned to build its competing service station. *Id.* at 1268, 1271. But the court "identifie[d] the 'injury' as the thing to be discovered, not that the defendant's state of mind or breach of duty may legally entitle the plaintiff to recover damages." *Id.* at 1272. It found that the statute of limitations began to run when Exxon built its service station and did not depend on plaintiffs discovering Exxon's intent. *Id.*

Although *Childers Oil* involved West Virginia's statute of limitations, the Fourth Circuit noted that the Supreme Court of Appeals of West Virginia had adopted a discovery rule similar to that codified in Virginia: "[T]he statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury . . . ." *Id.* (quoting *Stemple v. Dobson*, 400 S.E.2d 561, 565 (W. Va. 1990). Moreover, the court's holding aligns with existing Virginia case law.

For example, in *Eshbaugh v. Amoco Oil Co.*, 360 S.E.2d 350, 351 (Va. 1987), a landlord leased a gasoline service station to Amoco, which in turn subleased the property to the plaintiff. When the sublease was set to expire, Amoco informed Eshbaugh that the landlord would offer a new lease and asked Eshbaugh to cancel the existing sublease. Shortly after Eshbaugh canceled his sublease, the landlord informed Eshbaugh that there would be no new lease. The Supreme Court of Virginia held that Eshbaugh's fraud claim accrued on the date that Eshbaugh discovered he would not receive a new lease. The court made no mention of Amoco's or the landlord's intent, instead

7

noting only that Eshbaugh's reliance on Amoco's misrepresentation and the resultant injury marked the accrual of Eshbaugh's cause of action. *Id.*

As the Fourth Circuit noted in *Childers Oil*, this also aligns with the majority approach to statutes of limitations in other states that impose a similar "discovery rule" as Virginia Code § 8.01-249(1). In *Berkley v. American Cyanamid Co.*, the Fifth Circuit recognized that a cause of action for fraud "does not require more than knowledge on the plaintiff's part of the falsity of defendant's statements and their relationship to the claimed injury." 799 F.2d 995, 999 (5th Cir. 1986).

Accordingly, the court finds that Fluor's claim accrued at the latest on November 29, 2016, when Fluor and BAE executed a modification to their subcontract that eliminated the requirement for Fluor to build a temporary facility. At that time, Fluor knew that BAE's request for proposals related to a temporary facility was a misrepresentation and knew or had reason to discover the injury that resulted therefrom.[3] Because Fluor did not file its complaint until more than two years later, on October 17, 2019, its fraud claim is time-barred.

### 2. BAE Did Not Obstruct Fluor From Filing

The court further finds that Fluor cannot take advantage of Virginia's equitable tolling statute. *See* Va. Code § 8.01-229(D) ("When the filing of an action is obstructed by a defendant's . . . using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought."). In Virginia, "a statute of limitations is tolled until a person intentionally misled by a putative defendant could reasonably discover the wrongdoing and bring action to redress it." *F.D.I.C. v. Cocke*, 7 F.3d 396, 402 (4th Cir. 1993). "The character of fraud necessary to toll the statute must be of a variety involving moral turpitude. A defendant must intend

---

[3] The parties have not presented argument regarding when Fluor was injured, but "[i]n Virginia, only the slightest injury is required to start the running of the limitations period." *Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 129 (4th Cir. 1988). As Fluor suggests in its complaint, it was injured when it submitted a lower proposal based on the plan to build a temporary facility.

to conceal the discovery of the cause of action by trick or artifice and must have thus actually concealed it from the plaintiff in order for the exception to apply." *Id.* (quoting *Richmond Redevelopment & Hous. Auth. v. Laburnum Constr. Corp.*, 80 S.E.2d 574, 582 (Va. 1954)).

Fluor asserts that BAE concealed its fraud by failing to provide Fluor a copy of the prime contract. As a result, Fluor argues, BAE prevented Fluor from discovering the fraud before Fluor received a copy of the prime contract on October 3, 2018. As stated above, however, Fluor had knowledge of all the facts necessary for its cause of action to accrue under Virginia law. Therefore, BAE's alleged failure to disclose the terms of its prime contract did not prevent Fluor from discovering its cause of action. Moreover, Fluor asserts only that BAE did not provide a copy of its prime contract. Fluor does not suggest that BAE ever affirmatively misrepresented or concealed its fraud. BAE's silence, without more, is insufficient to toll the statute of limitations. *Newman v. Walker*, 618 S.E.2d 336, 340 (Va. 2005) ("Fraudulent concealment . . . 'must consist of affirmative acts of misrepresentation . . . . The fraud which will relieve the bar of the statute must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action.'" (quoting *Culpeper Nat'l Bank v. Tidewater Improvement Co.*, 89 S.E. 118, 121 (Va. 1916))).

### III. CONCLUSION

For the reasons stated above, the court finds that Fluor's fraud claim is barred by Virginia's two-year statute of limitations. The court will therefore dismiss Fluor's fraud claim. An appropriate order will be entered.

Entered: June 17, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge