IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| FLUOR FEDERAL SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:19-cv-00698 |
| | ) | |
| BAE SYSTEMS ORDNANCE SYSTEMS, | ) | By: Elizabeth K. Dillon |
| INC., | ) |     United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Pending before the court is Fluor Federal Solutions, LLC's ("Fluor") motion for clarification and reconsideration regarding Count IV of Fluor's complaint (Dkt. No. 41) and its motion to dismiss BAE Systems Ordnance Systems, Inc.'s ("BAE") counterclaim (Dkt. No. 44). These matters have been fully briefed, the court held a hearing on the motions, and the matters are ripe for resolution. For the reasons stated below, the court will deny the motion for clarification as moot and grant in part and deny in part the motion to dismiss.

I. BACKGROUND

**A. Factual Background**

In May 2011, the United States Army awarded BAE a contract to design and construct a natural gas-fired combined heating and power plant for the Radford Army Ammunition Plant ("RAAP") in Radford, Virginia. (Compl. 3, Dkt. No. 1.) BAE executed a subcontract with Fluor to build a boiler facility as part of BAE's project for the Army. This action arises out of the subcontract between Fluor and BAE. (*Id.* at 1.) The primary dispute relates to an increase in the cost of the subcontract work after the Army changed the scope of the project from designing

1

and building a temporary facility in one location to designing and building a permanent facility in a different location.

On October 7, 2015, BAE issued a request for a proposal from Fluor to design and build a temporary boiler facility at a specific location on the RAAP property. (*Id.* at 4.) On October 13, 2015, the Army the modified the prime contract to change the location of the boiler facility. (*Id.*) On December 10, 2015, the Army modified the contract again, this time to require BAE to design and construct a permanent boiler facility rather than a temporary facility.[1] (*Id.* at 4–5 (the Army issued a similar modification again on January 27, 2016).) On December 30, 2015, Fluor and BAE executed a fixed-price subcontract for Fluor to design and construct the temporary boiler. (*Id.* at 4–5.) Fluor argues that BAE concealed the modifications to the prime contract when entering the subcontract with Fluor in order to take advantage of the lower price Fluor submitted in its proposal. (*Id.* at 5.)

Throughout 2016, BAE issued several modifications to its subcontract with Fluor reflecting the modifications BAE received from the Army on the prime contract. On March 23, 2016, BAE directed Fluor to build a permanent—rather than temporary—boiler facility. (*Id.* at 5–6.) On March 28, 2016, Fluor began construction of the permanent facility and began negotiations with BAE on the cost of the permanent facility. (*Id.* at 6.) On September 1, 2016, the parties reached an agreement on the cost for the design of the permanent facility, but not on the cost for the construction of the permanent facility. (*Id.*) On November 29, 2016, the parties executed a modification to the subcontract, officially replacing the requirement to construct a temporary facility with a requirement to construct permanent facility and agreeing to "negotiate

---

[1] This fact appears to be in dispute. BAE represents that the Army did not officially decide to convert the temporary facility to a permanent facility until January 27, 2016. (Dkt. No. 40 at 31.)

2

and definitize the price for construction by December 15, 2016." (*Id.* at 7.) However, the parties remain unable to reach an agreement on the construction price. (*Id.* at 7–12.)

**B. Procedural Background**

On October 17, 2019, Fluor filed suit against BAE for breach of contract (Count I), quantum meruit (Count II), unjust enrichment (Count III), breach of the duty of good faith and fair dealing (Count IV), fraud in the inducement (Count V), and declaratory judgment (VI).[2] (*Id.* at 14–21.) On November 13, 2019, BAE filed a motion to dismiss Fluor's complaint for failure to state a claim upon which relief may be granted. (Dkt. Nos. 8, 9.)

**1. BAE's Motion to Dismiss the Complaint**

On February 7, 2020, the court held a hearing on BAE's motion to dismiss. At the hearing, the court issued an oral order granting the motion to dismiss as to Counts II, III, and VI, denying the motion to dismiss as to Count I, and taking Count V under advisement. (Dkt. Nos. 26, 27.) In addition, the parties agreed that Count IV, alleging breach of the duty of good faith and fair dealing, was an additional contract claim, not a stand-alone tort claim. (Pl.'s Ex A at 3, Dkt. No 41-1 ("Mr. Fitzsimmons: [] it's additional grounds for breach of contract, Your Honor, that's correct.").) The court ordered that the motion to dismiss as to Count IV was "moot by agreement of counsel" because Count IV "is just another breach of contract claim, not an independent tort of breach of good faith . . . ." (Pl.'s Ex B at 1, Dkt. No 41-2.) The minute entry for the hearing recorded court's oral orders as follows:

> The Court denies the motion as to Count 1, grants the motion as to Counts 2 & 3, finds moot by agreement of counsel Count 4, takes under advisement Count 5, and grants as to Count 6 of the Complaint. (Minute Entry, Dkt. No. 26.)

---

[2] On September 30, 2020, BAE filed a complaint against Fluor in related case 7:20-cv-587. On October 5, 2020, Fluor filed another complaint against BAE in related case 7:20-cv-596. A motion to consolidate cases 587 and 596 is pending. (Case No. 7:20-cv-587, Dkt. No. 5.) There is no motion to consolidate the instant case, number 7:19-cv-698.

3

On June 18, 2020, the court issued a memorandum opinion and order granting defendant's motion to dismiss Count V. (Mem. Op. 1, Dkt. No. 32; Order, Dkt. No. 3.) In the opinion, the court recounted its rulings on the motion to dismiss as to the other counts in the complaint and wrote that it had "denied Fluor's claim for breach of the duty of good faith and fair dealing as moot by agreement of counsel." (Mem. Op. 1.)

Fluor filed a motion for clarification and reconsideration regarding Count IV of its complaint. (Pl.'s Mot. for Clarification, Dkt. No. 41.) Fluor asked the court to clarify that it dismissed as moot BAE's motion to dismiss Count IV and did not dismiss Count IV itself. (*Id.* at 1.) On June 7, 2020, BAE filed a response, arguing that "the allegations in Count IV are subsumed into Count I." (Def.'s Resp. 2, Dkt. No. 42.)

## 2. Fluor's Motion to Dismiss the Counterclaim

BAE filed an answer and counterclaim alleging breach of contract (Count I) and seeking a declaratory judgment (Count II). (Answer, Dkt. No. 40). Fluor filed a motion to dismiss BAE's counterclaim arguing that: (1) BAE failed to satisfy the subcontract's conditions precedent to litigation; (2) BAE's allegations related to the "delta pricing approach" fail; (3) the subcontract does not contain an indemnification obligation; and (4) declaratory judgment is inappropriate. (Pl.'s Mot. to Dismiss, Dkt. No. 44; Pl.'s Br. in Support of Mot. to Dismiss, Dkt. No. 45.) BAE countered arguing: (1) the subcontract's dispute resolution clause does not preclude BAE from pursuing litigation; (2) the "delta pricing approach" is a subcontract requirement; and (3) declaratory judgment is appropriate. (Def.'s Br. in Opposition to Mot. to Dismiss, Dkt. No. 47.)

At the hearing on the motions, the court resolved confusion surrounding Count IV, which "survived as a portion of the breach of contract claim." (Hr'g Tr. 3, Dkt. No. 60.) The court also heard argument on Fluor's motion to dismiss the counterclaim.

## II. DISCUSSION

### A. Clarification on Count IV

At the hearing on February 7, 2020, Fluor explained that Count IV, alleging a breach of the duty of good faith and fair dealing, is a contract claim and not a tort claim. The court then denied BAE's motion to dismiss Count IV and ordered that the allegations in Count IV survive as part of the Count I breach of contract claim. At the hearing on August 26, 2020, the court made clear that the allegations in Count IV were not dismissed, but, rather, remain as part of the Count I breach of contract claim. As Fluor accurately stated, "the allegations set forth in []Count Four are now subsumed into Count One and they survive in Count One; so all of the allegations for the breach of the duty of good faith and fair dealing survive . . . ." (Hr'g Tr. 5–6, Dkt. No. 60.) Since the court has already clarified its ruling on Count IV and all parties appear to understand the ruling, the court will deny Fluor's motion for clarification as moot.

### B. Motion to Dismiss Counterclaim

For the reasons stated below, the court will deny Fluor's motion to dismiss BAE's counterclaim as to Count I and grant the motion to dismiss as to Count II.

#### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a

5

right to relief above the speculative level." *Id.* at 550. A court will accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A court need not accept "legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In adjudicating a motion to dismiss, 'a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.'" *Rothy's, Inc. v. JKM Techs., LLC*, 360 F. Supp. 3d 373, 378 (W.D. Va. 2018) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).

### 2. No Conditions Precedent

Fluor argues that the following subcontract language required BAE to notify and negotiate with Fluor prior to filing its counterclaim:

> BAE SYSTEMS and CONTRACTOR agree to timely notify each other of any claim, dispute or cause of action arising from or related to this Contract, and to negotiate in good faith to resolve any such claim, dispute or cause of action. To the extent that such negotiations fail, BAE Systems and Contractor agree that any lawsuit or cause of action that arises from or is related to this Contract shall be filed with and litigated only in a court of competent jurisdiction within the state from which this Contract is performed . . . . (Dkt. No. 45 at 11 (citing Dkt. No. 40 at 27).)

Fluor argues that because BAE did not comply with the subcontract notice and negotiation requirements, the court should dismiss BAE's counterclaim.

"A number of courts have found that when parties to a lawsuit have elected not to be subject to a court's jurisdiction until some condition precedent is satisfied, such as mediation, the appropriate remedy is to dismiss the action." *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d

6

645, 651 (E.D. Va. 2010) (collecting cases).  "Under Virginia law, in order to discern whether the parties intended a contractual provision to act as a condition precedent or a mere promise, general rules of contract interpretation govern, and 'the plain meaning of the contract controls.'" *Appalachian Power Co. v. Wagman Heavy Civil, Inc.*, No. 6:19-CV-00051, 2019 WL 6188303, at *4 (W.D. Va. Nov. 20, 2019) (quoting *Cox v. Snap, Inc.*, No. 1:16-cv-9, 2016 WL 5109518 at *4 (E.D. Va. Sept. 20, 2016)).  "While no specific words are necessary to create a condition [precedent], words such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as,' or 'subject to,' are words recognized as those that traditionally indicate conditions."  *Id.* (quoting *Standefer v. Thompson*, 939 F.2d 161, 164 (4th Cir. 1991) (quotations omitted)).

"[T]he law generally does not favor conditions precedent, [but courts] may [] construe a contract as conditional if its plain language compels [the court] to do so."  *Standefer*, 939 F.2d at 164.  In *Tattoo Art, Inc.*, for example, the court dismissed a suit because plaintiff failed to comply with a condition precedent that the parties "submit the dispute to mediation in Virginia Beach, Virginia, prior to filing any action to enforce th[e] Agreement."  711 F. Supp. 2d 649–50.  Similarly, in *Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, the court dismissed claims where the parties failed to comply with a condition precedent that stated, "[p]arties may pursue litigation only if, despite the Parties' attempts to mediate a dispute, such dispute remains unresolved."  No. 3:13CV442-JAG, 2013 WL 5962939, at *4 (E.D. Va. Nov. 6, 2013) (quotations omitted).  Likewise, in *Dewberry-Goodkind, Inc. v. Edgewood Properties, Inc.*, the court dismissed defendant's counterclaim because it failed to comply with a condition precedent stating, "[i]f you fail to give us written notice within such 10 days, then such claim shall forever be barred and extinguished."  No. 1:10CV118 (GBL), 2010 WL 11699618, at *3 (E.D. Va. July 23, 2010)

Here, BAE and Fluor agreed to "negotiate in good faith to resolve any [] claim, dispute or cause of action," but the plain language of the subcontract does not make this agreement a condition precedent to litigation. Fluor argues that the statement — "to the extent that such negotiations fail"— indicates that negotiations are a condition precedent to litigation. However, this language is not as explicit as the "prior to" and "only if" language forming conditions precedent in *Tattoo Art, Inc.* and *Dominion Transmission, Inc.*. Moreover, unlike *Dewberry-Goodkind, Inc.*, the instant subcontract does not include language that indicates failure to comply with the agreement "shall forever [] bar[] and extinguish[]" subsequent claims to litigation. Because the law does not favor conditions precedent and the language of the subcontract does not compel the court to construe a condition precedent, the court declines to interpret the subcontract as creating a condition precedent to litigation.

Even if the subcontract made negotiation a condition precedent to litigation, the parties have been locked in negotiations for years related to disputes arising from the subcontract. As BAE notes, the cases Fluor cites in which courts have dismissed claims for failure to comply with conditions precedent all involved "mediation, arbitration, or some other formal type of dispute resolution procedure." (Hr'g Tr. 43, Dkt. No. 60.) Even in *L. White & Co. v. Culpeper Mem'l Hosp., Inc.*, 81 Va. Cir. 27 (2010), where a condition precedent required informal negotiations, the condition also required mediation. By contrast, Fluor and BAE's subcontract only states that the parties agree to negotiate in good faith, not that they submit to any kind of formal mediation. As such, the parties have satisfied this agreement by negotiating for years over the terms of the subcontract, which is the basis for the instant dispute.

Finally, regarding notice, BAE did not notify Fluor in advance that it intended to file a counterclaim. Nevertheless, Fluor has received proper notice upon filing of the counterclaim and

8

has had a full and fair opportunity to both brief and argue its objections to the counterclaim. As noted above, the subcontract does not state that failure to provide notice requires dismissal of any subsequent litigation. In sum, the subcontract between Fluor and BAE does not contain a condition precedent that requires the court to dismiss BAE's counterclaim.

### 3. Count I – Breach of Contract

BAE alleges that Fluor breached the subcontract by: (1) failing to comply with subcontract obligations, including but not limited to the failure to complete the subcontract work by January 31, 2017; and (2) breaching the duty of good faith and fair dealing by "reneging on its agreement to provide change proposals for the conversion to a permanent facility based on the Delta Pricing Approach,"[3] among other "bad faith" actions. (Answer 54–57, Dkt. No. 40.) Fluor argues that it never agreed to the Delta Pricing Approach and that such an approach was never part of the subcontract. (Dkt. No. 45 at 16.)

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright,* 671 S.E.2d 132, 135 (2009) (quoting *Filak v. George,* 594 S.E.2d 610, 614 (2004)).

Here, the parties do not dispute that they have a legally enforceable subcontract, but they dispute whether the "delta pricing approach" is part of that subcontract. (Dkt. No. 45 at 11-12; Dkt. No. 47 at 10–13.) The "delta pricing approach," however, is not mentioned in the subcontract. BAE argues that the court should read Section 3(e) of the subcontract to require the

---

[3] BAE defines the "delta pricing approach" as "a proposal methodology that explains the difference, or delta, between the construction costs for the original temporary facility [] and the costs for the permanent facility [] on a line item basis." (Dkt. No. 47 at 14–15.)

9

delta pricing approach.  Section 3(e) states that BAE may "make changes within the general scope of th[e] contract in any . . . matters affecting th[e] contract," and "if any change causes an increase or decrease in the cost of or the time required for performance of this contract, an equitable adjustment shall be made in the contract price . . . ."  (Dkt. No. 47 at 16.)  The court is not persuaded that an equitable adjustment to the contract price requires the use of the delta pricing approach.

BAE further argues that the delta pricing approach is required by Modification 7, which, according to BAE, states that Fluor must submit a cost proposal in the format established by FAR 15.408, Table 15-2 Section III.  (Dkt. No. 47 at 17–18.)  To support this argument, BAE cites a letter it wrote to Fluor requesting a change proposal using the delta pricing approach.  (Dkt. No. 47 at 18.)  However, the letter does not indicate that Fluor agreed to this request, nor that this request became part of the subcontract or its modifications.  (Dkt. No. 47 at 18.)

Even though the delta pricing approach does not appear to be part of the subcontract, failure to comply with the delta pricing approach is not BAE's only argument for breach of contract.  BAE also alleges that Fluor breached the subcontract by failing to complete its work by January 31, 2017, failing to provide a sufficiently detailed design, failing to assign sufficient personnel to manage the work of its subcontractors, and failing to complete its work in accordance with the statement of work.  (Dkt. No. 40 at 55.)  Fluor does not address these grounds for breach of contract in its motion to dismiss.  Without explanation regarding why these additional grounds for breach of contract should be dismissed, the court will deny Fluor's motion to dismiss Count I of BAE's counterclaim.

### 4. Count II - Declaratory Judgment

BAE argues Fluor's failure to complete the subcontract work on time resulted in BAE incurring environmental fines, for which Fluor bears the ultimate responsibility, and this failure warrants declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.  (Dkt. No. 40 at 59.)  Fluor argues, among other things, that BAE's declaratory judgment claim duplicates the contract claim and serves no useful purpose because BAE's damages have already accrued.  (Dkt. No. 45 at 26–29.)

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942))).  "In determining whether to exercise declaratory jurisdiction, the court must consider whether declaratory relief would 'serve a useful purpose in clarifying and settling the legal relations in issue,' and whether the judgment would 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  *Id.* (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004)).  "With respect to the first factor, courts have repeatedly recognized that "[a] declaratory judgment serves no 'useful purpose' when it seeks only to adjudicate an already-existing breach of contract claim."  *Id.* (quoting *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426, 2012 U.S. Dist. LEXIS 105895, at *33, 2012 WL 3065929 (S.D.N.Y. July 25, 2012)) (collecting cases).  In addition, "a declaratory judgment is an inherently forward-looking mechanism,

11

intended to guide parties' behavior in the future." *Merino v. EMC Mortg. Corp.*, No. 1:09–cv–1121, 2010 U.S. Dist. LEXIS 26539, at *14, 2010 WL 1039842 (E.D. Va. Mar. 19, 2010).

Here, BAE's declaratory judgment action does not serve a useful purpose because it is duplicative of the BAE's breach of contract claim. Whether Fluor failed to meet subcontract deadlines and whether BAE suffered injury as a result are at issue in BAE's breach of contract claim, and they need not be addressed again in a declaratory judgment claim. Moreover, the result of the declaratory judgment action would not guide the parties' future behavior. BAE has already entered into a consent decree to pay its environmental fines and sought reimbursement from the Army for those fines. (Dkt. No. 47 at 27.) BAE even states that it is seeking "a declaration that Plaintiff is obligated to indemnify BAE OSI for the fines based on Plaintiff's past conduct in failing to complete the project on time." Such a declaration is inherently backward-looking, rather than forward-looking. Therefore, the court will grant Fluor's motion to dismiss Count II of BAE's counterclaim.

### III. CONCLUSION

For the above reasons, the court will enter an order denying Fluor's motion for clarification as moot (Dkt. No. 41), denying Fluor's motion to dismiss as to Count I of BAE's counterclaim (Dkt. No. 44), and granting Fluor's motion to dismiss as to Count II of Fluor's counterclaim (Dkt. No. 44).

Entered: March 15, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge