IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

FLUOR FEDERAL SOLUTIONS, LLC,   )
    )
    Plaintiff,   )
    )
v.   )   Civil Action No. 7:19-cv-00698
    )
BAE SYSTEMS ORDNANCE SYSTEMS,   )   By: Elizabeth K. Dillon
INC.,   )      United States District Judge
    )
    Defendant.   )

**MEMORANDUM OPINION AND ORDER**

Trial in this matter is scheduled to begin on January 17, 2023. Pending before the court are two motions by Fluor Federal Solutions, LLC ("Fluor") to exclude expert testimony (Dkt. Nos. 108, 110) and five motions in limine—three from Fluor (Dkt. Nos. 171, 172, 173) and two from BAE Systems Ordnance Systems, Inc. ("BAE") (Dkt. Nos. 168, 169). All of the motions are fully briefed; the court heard argument on the motions to exclude expert testimony on December 16, 2022, and heard argument on the motions in limine at the pretrial conference on January 6, 2023. For the reasons stated herein, all seven motions will be denied.

## I.   BACKGROUND

This case concerns a dispute arising from a subcontract between Fluor and BAE for the construction of a new natural-gas-fired boiler facility at the Radford Army Ammunition Plant in Radford, Virginia. The United States Army contracted with BAE to construct and design a temporary boiler facility at the Radford plant. BAE then solicited proposal from bidders, including Fluor, for a subcontract. Fluor ultimately won the contract to design the boiler facility (the "Subcontract"), which the parties executed on December 30, 2015. The next day, BAE informed Fluor that the Army had changed the scope of the project to a permanent boiler facility

1

as opposed to a permanent facility, and asked Fluor to submit any cost impact.  Over the next several years, the parties negotiated on a new price to design (and, as was eventually added to the Subcontract, to construct) the facility in light of the change from temporary to permanent.  In the process, the parties executed several modifications to the Subcontract.  Now, Fluor alleges that BAE has not fully paid Fluor for the work it performed under the Subcontract, and BAE alleges that Fluor has been overpaid and seeks reimbursement for the extent of the alleged overpayment.

Fluor brought this action in October 2019, asserting claims for breach of contract, quantum meruit, unjust enrichment, breach of the duty of good faith and fair dealing, fraud in the inducement, and for declaratory judgment.  (Dkt. No. 1 at 14–21.)  BAE asserts counterclaims for breach of contract and for declaratory judgment.  (Dkt. No. 40 at 54–59.)  After cross-motions to dismiss, only the breach-of-contract claims remain.

## II.  LEGAL STANDARDS

### A.  Expert Testimony

Rule 702 of the Federal Rules of Evidence governs admissibility of expert testimony. The testimony of a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" is admissible if: "(1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

After an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable."

*Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same).  When testimony is based upon "technical" or "other specialized knowledge," it is admissible if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) his methodology is sufficiently reliable; and (3) the testimony will assist the trier of fact by bringing the expert's knowledge to bear upon a fact in issue.  *See Daubert*, 509 U.S. at 589–91.  The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct.  *Cooper v. Smith & Nephew, Inc*., 259 F.3d 194, 199 (4th Cir. 2001); *Maryland Cas. Co. v. Therm–O–Disc, Inc*., 137 F.3d 780, 783 (4th Cir. 1998).  Indeed, "[v]igorous cross examination, presentation of contrary evidence and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.

The Fourth Circuit has explained the *Daubert* standard as a "two-step gatekeeping function" required of trial courts.  First, the trial court must ask whether the proffered evidence is valid and reliable.  *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000).  Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit": assuming the evidence is reliable, will it "assist the trier of fact to understand or determine a fact in issue."  *Maryland Cas. Co*., 137 F.3d at 784 (quoting *Daubert*, 509 U.S. at 592).

### B.  Motions in Limine

"The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider."  *Gonzalez v. SeaWorld Parks & Ent*., No. 4:20-cv-27, 2021 WL 3203535, at *1 (E.D. Va. July 28, 2021) (citation omitted).  However, "[t]he decision to

grant or deny a motion in limine is within the district court's discretion." *Cougill v. Prospect Mortg. LLC*, No. 1:13-cv-1433, 2014 WL 348539, at *1–2 (E.D. Va. Jan. 31, 2014). "[A] motion in limine 'should be granted only when the evidence is clearly inadmissible on all potential grounds.'" *Gonzalez*, 2021 WL 3203535, at *1 (alteration in original) (citation omitted); *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017).

## III. ANALYSIS

### A. Fluor's Motion to Exclude the Expert Testimony of Mark LoManto (Dkt. No. 108)

Fluor first moves to exclude the testimony of Mark LoManto, a licensed CPA and former Defense Contract Audit Agency ("DCAA") auditor who BAE has proffered to evaluate whether Fluor's change proposals adhered to the instructions and formats prescribed in Federal Acquisition Regulation § 15.408, Table 15-2, Section III.B, as well as whether the costs that Fluor classified as Base Scope Work costs in the change proposals were solely attributable to the project change from a temporary to a permanent boiler facility.

Fluor first argues that, because interpreting and applying FAR § 15.408 to the facts of this case call for a legal opinion which LoManto is not qualified to render and which the Court "needs no expert assistance in rendering," LoManto's testimony is inadmissible. (Dkt. No. 109, at 1–2.) The court disagrees. The Fourth Circuit has opined on the application of Rule 702 to cases involving complex legal frameworks and found expert testimony on those frameworks to be admissible as a general matter:

> [W]hen the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the [trier of fact], the testimony may be admitted. Indeed, courts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues.

4

*United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).  This remains true where the testimony

purports to explain "business customs and practices" that may intersect with the legal

framework.  *See, e.g.*, *United States v. Leo*, 941 F.2d 181, 196–97 (3d Cir. 1991) (recognizing

that testimony concerning custom and practice is proper so long as the expert did not give his

opinions as to legal duties that arose under the law).  Here, the government contracting principles

underlying FAR § 15.408, and the reasonableness of costs in light of those principles, are

certainly complex and technical in nature.  *See, e.g.*, *Kellogg Brown & Root Servs., Inc. v. United*

*States*, 107 Fed. Cl. 16, 26 (2012) (expert qualified "on the subjects of government contract cost

and pricing and the application of the FAR to government contracts).  The court, as factfinder,

would benefit from an expert perspective on whether, and the extent to which, Fluor's change

proposals comply with FAR § 15.408.

Fluor also argues that this court has already ruled on the issue of whether the Subcontract

calls for change proposals that are compliant with Table 15-2 of FAR § 15.408 and concluded

that it does not, meaning that LoManto's testimony is irrelevant to the issues remaining for trial.

Fluor focuses on the portion of the motion to dismiss opinion in which the court stated that "the

delta pricing approach does not appear to be part of the subcontract."  (Dkt. No. 65 at 10

(emphasis added).)  But Fluor is mistaken as to the import of the court's holding, which merely

denied Fluor's motion to dismiss BAE's breach-of-contract counterclaim.  In doing so, the court

observed that the Subcontract does not explicitly mention a "delta pricing" approach and, in turn,

reasoned that delta pricing was not required to obtain an equitable adjustment.  FAR § 15.408

and the delta pricing approach are not necessarily synonymous.[1]  The language Fluor quotes

---

[1]  In its memorandum in support of its motion to dismiss, Fluor appeared to recognize a distinction between
FAR § 15.408 and the term "delta pricing."  (*See* Dkt. No. 45 at 11–12 ("Nothing in the Subcontract or Mod 7
mandates the use of the 'Delta Pricing Approach'. . . .  Mod 7 requires that a change proposal be submitted 'in

from the opinion quoted does not represent, as a matter of law, a definitive interpretation that the

Subcontract does not require cost proposals to comply with FAR § 15.408.  The court has denied

BAE's motion for partial summary judgment on the question of Fluor's compliance with the

FAR due to remaining genuine disputes of material fact.  (Dkt. No. 13.)  Thus, contrary to

Fluor's argument, the issue of whether Fluor's cost proposals complied with Table 15-2 in FAR

§ 15.408 remains unresolved at this stage, and the court may receive evidence and testimony

pertinent to that issue at trial.

Because LoManto's opinions address that issue, his testimony would aid the trier of fact

in understanding FAR § 15.408, relevant industry-accepted methodologies to comply with its

requirements, and whether Fluor's change proposals fit those methodologies.  With regard to

Fluor's argument that LoManto's opinions "rely on incorrect facts regarding the scope of

changes directed by BAE to the new permanent Boiler Facility" (Dkt. No. 109 at 15), its

grievance is grounded in its fundamental disagreement between BAE on what facts are germane

to the analysis, which should be resolved at trial.  The court will deny Fluor's motion to exclude

the expert testimony of Mark LoManto.

**B.  Fluor's Motion to Exclude the Expert Testimony of Alex Staley (Dkt. No. 110)**

Fluor also moves in limine to exclude the testimony of Alex Staley, who has been

proffered by BAE as a forensic scheduling expert.  Although the parties purportedly agreed to a

project completion date of January 31, 2017, Fluor achieved substantial completion on or about

October 20, 2017.  This leaves 262 days between that completion date and Fluor's achieving

substantial completion of the project.  Fluor claims BAE is responsible for 213 days of delay,

and seeks damages related to that delay.  BAE proffers Staley to express an opinion as to which

---

accordance with FAR 15.408, Table 15-2 Section III.' But nothing in FAR 15.408 . . . requires [a] 'Delta Pricing
Approach.'").)

parties are responsible for what amount of delay.  Fluor argues that Staley's proffered testimony fails the *Daubert* standard.

Fluor first criticizes Staley's selected methodology of schedule analysis.  The method, Method Implemental Protocol 3.2 ("MIP 3.2," otherwise known as an "as-planned v as built" analysis), was promulgated by the Association for Advancement of Cost Engineering ("AACE") in a 2011 publication that set out guidelines for nine generally accepted methods used in the field of forensic scheduling analysis.  Fluor claims that this method is generally disfavored and that it applies only to relatively simple cases, as opposed to long duration cases or where there are significant changes between the original planned work scope and the final as-built scope.  But as BAE points out, the AACE has stated that "it is impossible to recommend one method that is the 'best' method, or to rank the methods in order of importance."  (Dkt. No. 136-3 at 125.)  Selection of a method is, predictably, dependent on a variety of factors, several of which seem to favor the methodology Staley used.  For example, Staley's analysis purports to identify both compensable delays and concurrencies, and according to a table produced by AACE, Method 3.2 is appropriate in cases where one expects both compensable delays and concurrencies.  (Dkt. No. 136-3 at 127.)  Further, in this case there is an identifiable baseline schedule and an as-built record (both of which make Method 3.2 more appropriate).

Fluor also argues that Staley's use of a May 12, 2016 "Preliminary Schedule" to serve as his baseline schedule and his point of reference for his schedule analysis was flawed—in that it does not depict the as-bid Project schedule or scope—and that a later July 18, 2016 schedule should have been used.  Staley rejected the use of the July schedule because apparently Fluor had already mobilized to the site and begun construction activities before that date, and AACE's protocol suggests that the analyst to select the "earliest, confirmed plan."  (Dkt. No. 136-3 at 19.)

Here, Fluor and BAE's experts evidently disagree on the appropriate baseline schedule, and presumably each will testify as to the reasons why their selection more reliably and accurately models the allocation of delay. But that is not a basis to exclude Staley opinions. His selection of the May schedule is not inherently unreliable, and the court, as factfinder, is plenty able to determine which schedule more closely matches the facts. Fluor's motion to exclude Staley's testimony will be denied.

## C.  BAE's Motion in Limine to Limit Use of Pre-Contract Actions (Dkt. No. 168)

BAE moves in limine to limit Fluor's use of evidence of alleged pre-contract "concealment"—in other words, evidence of BAE's dealings with the Army before it executed the Subcontract with Fluor. In this case, Fluor's broader argument is that BAE knew through its dealings with the Army that the project would be modified for a permanent facility (and its location changed) before it executed the Subcontract for Fluor to design a temporary facility in December 2015. BAE asks the court to prohibit Fluor from relying on that pre-contract conduct as evidence of an alleged breach of the implied covenant of good faith and fair dealing and/or the Subcontract.

BAE first argues this evidence is irrelevant to Fluor's breach-of-contract claim because pre-contract actions cannot be used to support a claim for breach of the implied covenant of good faith and fair dealing. "[A]ctions occurring before contract execution are not considered in a claim for breach of the implied covenant because no contractual relationship existed." *BAE Sys. Ordnance Sys., Inc. v. Fluor Fed. Sols., LLC*, No. 7:20-cv-587, 2022 WL 969773, at *17 (W.D. Va. Mar. 30, 2022) (citing *Walker v. Hill*, No. 3:20CV149, 2021 WL 1062238, at *9 (E.D. Va. Mar. 19, 2021)). Here, BAE argues that because all its exchanges with the Army that are at issue

in the case occurred before the parties executed the Subcontract, they cannot be used to support a claim that that BAE breached the implied covenant.

However, Fluor can introduce evidence of BAE's pre-contract conduct as necessary context for BAE's conduct after execution of the contract. To the extent Fluor points to BAE's nondisclosure of dealings with the Army after December 30, 2015 (which could be relevant to an alleged breach of the implied covenant), as a factual matter one would need to understand the backdrop upon which BAE was negotiating with the Army and with Fluor. BAE's dealings with the Army—concurrent with its dealings with Fluor—are a significant part of this case. Without any evidence of BAE's dealings with the Army before executing the contract, the trier of fact would be deprived of relevant information about what BAE may have known (and/or concealed) while negotiating with Fluor after December 30, 2015.

BAE cites several cases which it claims preclude the use of pre-contract conduct as evidence at trial. *See, e.g.*, *Walker v. Hill*, No. 3:20cv149, 2021 WL 1062238 (E.D. Va. Mar. 19, 2021). However, as Fluor emphasizes, those decisions—all on motions to dismiss—state only that the pre-contract conduct *alone* could not support a breach of the implied covenant, and they do not purport to address whether such evidence would be admissible at trial to contextualize post-execution conduct. *See, e.g.*, *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 995–96 (Fed. Cir. 2014) (pre-contract conduct used to assess claim for post-execution breach of the implied covenant). BAE's motion asks the court to "preclude Fluor from relying on BAE OSI's pre-contract conduct as evidence of an alleged breach of the implied covenant." (Dkt. No. 183 at 1.) No party disputes that pre-contract actions themselves cannot constitute a breach-of-contract claim. But it can provide relevant context for post-contract actions. BAE's motion will be denied.

**D. BAE's Motion in Limine to Limit Use of Project Change Notices ("PCNs") (Dkt. No. 169)**

BAE moves to limit Fluor's use of its Project Change Notices ("PCNs"), which were submitted as part of two change proposals (one in August 2017 and one in August 2019).  The PCNs represent individually numbered proposed changes to the work, along with an explanation of the costs associated with the change.  Each PCN has two parts: (1) a written narrative describing/advocating for the change; and (2) various documents in support of the written narrative.  BAE ask the court to preclude Fluor from submitting the narrative sections of the PCNs as evidence of the alleged facts contained in them.  The court denied this motion on the record at the pre-trial conference, but it provides further reasoning here.

BAE first argues that the PCN narratives must be excluded as hearsay because the narratives are out-of-court statements to be offered for their truth, and the business records exception to the hearsay rule does not apply.  Federal Rule of Evidence 803(6) provides that a record of an act, event, or opinion is not excluded by the rule against hearsay if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).  The theory behind the business records exception embodied in Rule 803(6) is that "[r]eports and documents prepared in the ordinary course of business are generally

presumed to be reliable and trustworthy." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204–05 (4th Cir. 2000). In determining admissibility courts are to consider "the character of the records and their earmarks of reliability . . . from their source and origin and the nature of their compilation." *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943).

BAE principally argues that the PCN narratives were not made "at or near the time" by "someone with knowledge." Fluor's PCN narratives were primarily prepared by Mike Sipple, Fluor's Senior Director of Prime Contracts. (Dkt. Nos. 169-1 at 37:16–19; 169-2 24:16–18.) Sipple, who is not a technical specialist, did not begin working on the project until May 1, 2017, about a year and a half after the project began. (Dkt. No. 169-2 at 10:3–5.) BAE argues that, because the PCNs were allegedly written many months after completion of the work described in the narratives by someone who allegedly lacks personal knowledge, Fluor cannot claim the business records exception to the hearsay rule.

The court disagrees with BAE's application of Rule 803(6) to the PCN narratives. Although Sipple is not a technical specialist, he does appear to have personal knowledge of certain PCNs gained through project site visits. For the other PCNs, Sipple drew upon the knowledge of Fluor personnel intimately involved with each PCN, such as members of the Subcontracts, Project Management, and Estimating teams (including personnel on-site in Radford). *See, e.g.*, *United States v. McCoy*, 504 F. App'x. 228, 231 (4th Cir. 2013) (permitting a qualified witness to rely on "information transmitted by—someone with knowledge"). Sipple need not be the 'most knowledgeable' on the PCNs to which he will testify—he only needs "knowledge." Fed. R. Evid. 803(6).

Lastly on Rule 803(6), BAE argues that the PCNs are not business records because the context indicates a lack of trustworthiness; it claims that that discovery has revealed the factual

narratives to be factually incorrect, post-hoc justifications written for the purpose of securing

more money.  But Rule 803(6) only requires a "qualified witness" that "can lay the evidentiary

foundation to ensure the records' trustworthiness."  *United States v. Jacobs*, No. 94-5055, 1995

WL 434827, at *1 (4th Cir. 1995) (citing *United States v. Moore*, 791 F.2d 566, 574 (7th Cir.

1986)).  And Fluor is entitled at trial to call that witness and attempt to lay foundation—as it

claims it will—that the PCNs were prepared during project performance and under

circumstances that do not indicate a lack of trustworthiness.  At present, the court cannot

conclude that the PCN narratives definitively are not business records under Rule 803(6).  BAE's

motion in limine to exclude the narratives will be denied.

### E.  Fluor's Motion to Exclude Damages Testimony by BAE Witnesses (Dkt. No. 171)

Fluor moves the court to exclude any testimony from BAE's fact or expert witnesses

related to BAE's alleged damages in this case.  According to Fluor, the first time it became

aware of the specific amounts of BAE's claimed damages was May 2, 2022, when it received

Staley's expert report, which included the estimated damages separated into several categories.

Fluor alleges that BAE never, during the project nor the litigation up to that point, articulated its

specific damages to Fluor.  The absence of notice, Fluor argues, meant that it never had the

chance to cure any alleged deficiencies.  According to Fluor, a notice requirement is

memorialized in the Subcontract at paragraph 19, which states that the parties "agree to timely

notify each other of any claim, dispute or cause of action arising from or related to this Contract,

and to negotiate in good faith to resolve any such claim, dispute or cause of action."  (*See* Dkt.

No. 113-53 at 24.)

But Fluor does not cite any part of the Subcontract supporting the proposition that BAE

was required to provide the exact dollar amount of any damages before it filed a lawsuit relating

to the Subcontract.  In deciding Fluor's motion to dismiss BAE's counterclaim, the court already considered and rejected the argument that BAE had a contractual duty, as a condition precedent to litigation, to provide notice to Fluor of its precise claim.  (*See* Dkt. No. 65 at 6–9.)  Fluor cites *United States v. Centex Construction Co., Inc.*, 638 F. Supp. 411, 413 (W.D. Va. 1985)—in which the court dismissed a claim because the plaintiff failed to notify the defendant within 7 days after additional work was performed, as the contract required—but did not cite to any analogous provision in this Subcontract.  Moreover, *Centex* is a case about the *sub*contractor's obligation to give notice of out-of-scope work, not an obligation for the *prime* contractor to give notice of alleged damages.

Fluor next argues that BAE has no fact or expert witness who can opine on its financial damages.  Fluor singles out John Dennis and Jared Hendrick—the two witnesses BAE identified for testimony on its damages—and cited to portions of their depositions which they argue indicate their limited familiarity with BAE's damages calculations.  Although they do not—nor are they required to—provide expert cost analysis, both Dennis and Hendrick did play intimate roles in documenting the costs BAE incurred due to what it alleges was Fluor's deficient work.  Fluor argues that these witnesses were unable to provide "any analysis whatsoever regarding the reasonableness of the damages," but it is the cause, not the reasonableness, of BAE's alleged damages that is at issue in the case, and BAE's two proffered fact witnesses may testify to that.

Fluor also seeks to exclude testimony from Staley on damages.  According to Fluor, such testimony would go beyond the scope of Staley's report, as he conducted no independent analysis relating to damages.  Yet the content of Staley's report belies that characterization.  Three pages of Staley's report discuss BAE's damages unrelated to Mod 7, specifically breaking them down into three categories.  (*See* Dkt. No. 136-10 at 25–28.)  Two of those categories

("Extended Project General Conditions" and "Extended Start-Up/Commissioning Costs") relate directly to Staley's calculations of the delays in this case, and Staley conducted analysis for the third category ("Direct Impact Costs") both by validating the source of the costs and by interviewing witnesses of BAE to confirm the costs represented additional work BAE had performed.  Thus, it cannot be said that damages testimony categorically exceeds the scope of Staley's report.  Fluor's motion in limine to exclude BAE's damages testimony will be denied.

**F.  Fluor's Motion to Exclude Testimony Regarding Errors by Zapata Group (Dkt. No. 173)**

Fluor moves the court to exclude any lay or expert testimony proffered by BAE intended to establish (1) that alleged errors and omissions by Fluor's designer, Zapata Group, resulted in alleged cumulative-impact (i.e., loss-of-efficiency or lost-productivity) damages or other costs to Fluor; and (2) that these lost-productivity or loss-of-efficiency damages are being claimed against BAE in Fluor's Base Scope costs or in Fluor's PCNs.

Fluor retained Zapata to assist with design work for the boiler facility.  During the project, Fluor claimed some backcharges against Zapata for additional performance costs.  When Fluor's forensic scheduling expert, Russell Wodiska, did a critical path delay analysis to apportion responsibility for Fluor's delay among the involved parties, it allocated (out of 262 total calendar days) 213 days to BAE, 35 days to Fluor and its subcontractors, and 14 days to Zapata.  On the other hand, Staley opines that out of the 262 days of delay, 201 were caused by Fluor, with the vast majority of those days attributable to design errors by Zapata.  Fluor maintains that it is not seeking from BAE any costs or delays caused by Zapata. As a result, Fluor asks the court to exclude any testimony purporting to establish that Fluor seeks to recover for any costs resulting from Zapata's errors.

14

As to this motion, the parties have agreed to narrow the scope of the issue.  Specifically, the parties stipulated that BAE is not prohibited from asking questions during cross-examination related to Zapata's performance, that performance's impact on the project, and whether Fluor has properly excluded those alleged impacts from its damages.  They further stipulated that Fluor's motion is not addressed to BAE evidence on delay, and that Fluor will address its objections to BAE's lay and expert testimony regarding delay at trial.

Although Fluor asserts that it is not seeking any costs resulting from alleged cumulative impact due to errors by Zapata, that is not sufficient to put the issue to rest.  Rather, Fluor still bears the burden at trial of proving that BAE is responsible for any costs, and that its damages do not include costs caused by cumulative impact due to Zapata's design work.  BAE is not categorically prohibited from offering evidence to refute that (provided that proper foundation is laid).  If BAE's witnesses have personal knowledge (or a disclosed expert opinion) as to information that is probative of whether any project event or performance issue (including any act or omission by Zapata), impacted Fluor's or its subcontractor's labor productivity or labor efficiency or resulted in cumulative impact, they may offer testimony as to that information.  Except to the extent of the parties' stipulations, the court will deny Fluor's motion in limine.

## G.  Fluor's Motion to Exclude Testimony Regarding Its 2017 and 2019 Change Proposals (Dkt. No. 172)

Lastly, Fluor moves the court to exclude any testimony and/or presentation of evidence by BAE witnesses regarding (1) any cost reasonableness analysis performed by BAE with regard to Fluor's August 2017 change proposal submission, and (2) any analysis performed by BAE with regard to Fluor's August 2019 change proposal.

In October 2017, BAE initially rejected Fluor's August 2017 change proposal in a three-page letter.  (*See* Dkt. No. 113-40.)  According to Fluor, for many of the PCNs, BAE stated that

15

"[t]he proposal does not demonstrate that this work constitute a change to the original version of the SOW or to the Rev 4 SOW." (Dkt. No. 113-41.)  Two years later, in August 2019, Fluor submitted a revised proposal which updated its claimed costs; shortly thereafter, in October 2019, Fluor filed this suit and never received a response from BAE for this change proposal. Fluor asserts that BAE has not produced in discovery any substantive analysis of the costs in Fluor's OCNs, nor offered expert analysis or opinion concerning the reasonableness of those costs, and thus that BAE cannot now present testimony at trial that Fluor's costs were not reasonable.

First, as with Fluor's motion to exclude evidence concerning Zapata, it is Fluor's burden to prove that the costs reflected in these proposals were fair and reasonable, not BAE's. Moreover, BAE's letter in August 2017—all of which BAE incorporated by reference as to the August 2017 proposal in an answer to Fluor's interrogatories (Dkt. No. 177-3 at 14–15)— discusses more analysis than Fluor acknowledges.  Though BAE did repeat several times throughout the document that the proposal did not adequately demonstrate that there was a change, that was often accompanied by further explanation specifying that Fluor needed to (and, according to BAE, did not) sufficiently identify the changed work scope and the costs associated with those changes such that BAE could determine whether the claimed work constituted a change.  Further, multiple BAE witnesses did conduct and document Cost Realism/Technical Evaluations of Fluor's PCNs, including reasons for rejection (*see, e.g.*, Dkt. No. 177-2).  Fluor offers no justification as to why the witnesses who contributed to those evaluations should be excluded from testifying to those details at trial.  Fluor's motion to exclude testimony by BAE witnesses related to its August 2017 and August 2017 change proposals will be denied.

16

## IV.  CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that the pending motions to exclude

expert testimony (Dkt. Nos. 108, 110) and motions in limine (Dkt. Nos. 168, 169, 171, 172, 173)

are DENIED.

Entered: January 15, 2023.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge